IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 59419-6-II |
| Respondent, | | |
| v. | | |
| TERRY LYNN SILBERNAGEL, | | UNPUBLISHED OPINION |
| Appellant. | | |

CRUSER, C.J.—Terry Lynn Silbernagel appeals her conviction for third degree assault, arguing that the evidence was insufficient to prove the essential element that the victim, Alicisia Jackson, was a health care provider because, she asserts, there was no evidence presented that Jackson was certified under Title 18 RCW or that Good Samaritan Hospital was a licensed hospital under chapter 70.41 RCW. The State responds that there was sufficient evidence to prove that Jackson was a health care provider because the facts demonstrated that Jackson was a certified nursing assistant.

We conclude that the record established that Jackson was a health care provider and therefore sufficient evidence supported Silbernagel's third degree assault conviction. Accordingly, we affirm.

FACTS

I. Background

Jackson, a certified nursing assistant (CNA) at Good Samaritan Hospital, was assisting nurses in dealing with Silbernagel, who was a patient. Silbernagel was acting belligerently and swung her legs over the side of the hospital bed, slamming Jackson into the wall. Silbernagel then started running down the hallway. Jackson caught up to Silbernagel and blocked the corridor to the elevator. Silbernagel pulled Jackson by her braids into a corner and began punching her. Silbernagel pushed Jackson's face into the wall twice before security arrived to escort Silbernagel back to her room. Jackson suffered a concussion and injuries to the right side of her body and lower back as a result of the altercation.

Officer Cameron Olinger responded to Good Samaritan Hospital to investigate the report of the assault on Jackson, and when he spoke to Jackson, she identified herself as a CNA.

II. Trial

At trial, Jackson and Officer Olinger testified to the above facts.

Jackson testified that she has been a CNA for 16 years. Jackson testified that to become a CNA, she had to take a year-and-a-half long course and get certified by the State. Jackson stated that she was licensed and certified in Washington, and her license allowed her to do in-home care services. Jackson testified that her duties as a CNA were to take care of patients, take notes, and perform a variety of other tasks supporting the nurses. Jackson was working at two hospitals during the time the incident occurred, Good Samaritan Hospital and Fort Lewis Hospital. The incident occurred at Good Samaritan Hospital. Jackson described the hospital as having roughly 20 rooms per floor, including about 10 rooms for palliative care, a surgery room, and an emergency room.

Both counsels and the State's witnesses consistently referred to Good Samaritan as a hospital. Officer Olinger testified that he was dispatched to "Good Samaritan Hospital." 2 Verbatim Rep. of Proc. (VRP) at 212. He also described Silbernagel as a patient on a medical hold. And Officer Olinger further testified that when he spoke to Silbernagel, "[s]he was in a hospital room on her bed." *Id*.

At the conclusion of the trial, the trial court presented counsel with an opportunity to contest the proposed jury instructions. The State and defense counsel indicated that they had no concerns. The jury found that Silbernagel was guilty of assault in the third degree. Silbernagel appeals.

## DISCUSSION

### Sufficiency of Evidence

Silbernagel argues that there was insufficient evidence to support her third degree assault conviction because the evidence did not demonstrate that Jackson was a health care provider. Specifically, Silbernagel contends that there was no evidence in the record that Jackson was certified as a health care provider under Title 18 RCW or that Good Samaritan was a licensed hospital under chapter 70.41 RCW. The State argues that Silbernagel's conviction should be affirmed because sufficient evidence established that Jackson was a health care provider. We conclude that there was sufficient evidence for a rational trier of fact to conclude that Jackson was a health care provider.

A. *Legal Principles*

"In a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt." *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559

(2005). Whether the evidence is sufficient to support a conviction is a question of constitutional law reviewed de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). On appeal, evidence is viewed in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Circumstantial evidence and direct evidence are considered equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Appellate courts defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Roberts*, 5 Wn.3d 222, 234, 572 P.3d 1191 (2025).

A person is guilty of assault in the third degree if they assault a health care provider who was performing their health care duties at the time of the assault. RCW 9A.36.031(1)(i). A " 'health care provider' means . . . a person regulated under Title 18 RCW and employed by, or contracting with, a hospital licensed under chapter 70.41 RCW." RCW 9A.36.031(1)(i). Whether the victim is a health care provider is an essential element of the crime. *State v. Gray*, 124 Wn. App. 322, 325, 102 P.3d 814 (2004). The State must provide evidence that the victim was certified under Title 18 RCW and the institution was licensed under chapter 70.41 RCW to establish the essential element that the victim was a health care provider. *Id.*

Title 18 RCW provides laws for several professions, including health care providers. A "[n]ursing assistant" is an individual who assists in the delivery of nursing and nursing-related activities to patients in a health care facility. Former RCW 18.88A.020(8) (2018). A "[n]ursing assistant-certified" is an individual certified under chapter 18.88A RCW. Former RCW 18.88A.020(8)(a). No person may represent themselves as a nursing assistant-certified without being certified pursuant to chapter 18.88A RCW. RCW 18.88A.040(2).

A "[h]ospital" under chapter 70.41 RCW means "any institution, place, building, or agency which provides accommodations, facilities and services over a continuous period of twenty-four hours or more, for observation, diagnosis, or care . . . [for] condition[s] for which obstetrical, medical, or surgical services would be appropriate for care or diagnosis." RCW 70.41.020(9).[1] No person may operate or identify an institution as a hospital within Washington if the hospital is not licensed under chapter 70.41 RCW. RCW 70.41.090(1).

B. *Application*

First, Silbernagel argues that insufficient evidence supported her third degree assault conviction because there was no evidence in the record that Jackson was a certified health care provider under Title 18 RCW. Silbernagel compares the evidence in this case to that presented in *Gray*, where Division Three of this court held that insufficient evidence supported Gray's conviction for third degree assault where the victim, a nursing assistant, testified that she was certified by the State but not what statutory scheme she was certified under. 124 Wn. App. at 325. But here, unlike *Gray*, Jackson testified that she was a certified nurse assistant. Because CNAs are regulated under chapter 18.88A RCW, Jackson's testimony that she is a CNA created a reasonable inference that she is a person regulated under Title 18 RCW.

Silbernagel also references *State v. Nation*, No. 39151-5-III, slip op. (Wash. Ct. App. Sept. 17, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/391515_unp.pdf, an unpublished Division Three decision holding that mere reference to a physician as "Dr. Thorpe" was insufficient to establish that he was a healthcare provider where the record was completely

---

[1] RCW 70.41.020 was amended in 2025. Because this amendment does not affect our analysis, we cite to the current version. *See* LAWS OF 2025, ch. 182, § 4.

void of any evidence regarding the physician's professional training, education, experience, qualifications, certifications, or licensure. Again, this case is distinguishable because Jackson testified regarding her training, experience, and certification.

Next, Silbernagel argues that the evidence was insufficient to prove that Jackson was a health care provider because there was no evidence that Good Samaritan was a licensed hospital under chapter 70.41 RCW. Silbernagel references *Gray* and *Nation* for the proposition that referring to a hospital as a "hospital" is not sufficient to establish that the hospital is licensed under chapter 70.41 RCW. *Gray*, 124 Wn. App. at 325; *Nation*, No. 39151-5-III, slip op. at 1, n.1. Unlike in *Gray* and *Nation*, the evidence in this case demonstrates that Good Samaritan operated as a licensed hospital. Jackson testified that the hospital had approximately 20 rooms including a surgery room and emergency room. Officer Olinger testified that he was dispatched to "Good Samaritan Hospital." 2 VRP at 212. He also described Silbernagel as a patient on a medical hold. And Officer Olinger further testified that when he spoke to Silbernagel, "[s]he was in a hospital room on her bed." *Id.* at 215.

To the extent that *Nation* and *Gray* require the State to elicit testimony regarding the specific statutory provision a healthcare provider and hospital are certified under, we conclude that such an approach is overly technical and is belied by common sense. Operating a hospital or even using the word "hospital" to identify an institution, if the hospital is not licensed under chapter 70.41 RCW, is prohibited. RCW 70.41.090(1). Because Good Samaritan was operating and identified as a hospital, there is a reasonable inference that the hospital was licensed under chapter 70.41 RCW.

Accordingly, the evidence is sufficient for a rational trier of fact to have found that the essential element of assault in the third degree, that Jackson was a health care provider, was established beyond a reasonable doubt.[2]

CONCLUSION

We conclude that sufficient evidence demonstrated that Jackson was a health care provider as required to support the third degree assault conviction. We affirm Silbernagel's third degree assault conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[2] Silbernagel raises only one assignment of error, that the evidence was insufficient to prove that the victim was a health care provider. The State, confusingly, includes an apparent response to an argument that Silbernagel does not make—to wit, that the to-convict instruction was constitutionally infirm for having omitted an essential element. Having raised this argument itself, the State then argues that Silbernagel cannot challenge the instruction for the first time on appeal. To the extent it is clear, the State appears to argue that because Silbernagel did not challenge the to-convict instruction, she cannot bring a claim of *insufficient evidence* because the to-convict instruction, even if it omitted an essential element, became the law of the case. The State cites to *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998), a case that held that the inclusion of an *additional* element in the to-convict instruction that the State would not have otherwise obligated to prove becomes the law of the case where the State failed to object. Because *Hickman* dealt with an *increase* in the elements that State needed to prove, rather than the omission of an essential element, it is inapposite. The State cites no authority holding that it can be relieved of its burden to prove the essential elements of a crime by way of the law of the case doctrine if a to-convict instruction omits an essential element and is not objected to. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post–Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

No. 59419-6-II

CRUSER, C.J.

We concur:

VELJACIC, J.

CHE, J.